# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 5:15-CV-6141-FJG ) |
| REX BRYAN HAULTAIN, | ) ) ) |
| Defendant. | ) |

**ORDER**

Currently pending before the court is Defendant's Motion to Dismiss (Doc. No. 3) and Defendant's Motion to Stay Discovery (Doc. # 10).

### I.  BACKGROUND

Defendant Haultain was born in New Zealand and became a naturalized citizen of the United States on June 21, 2012. On February 13, 2013, Haultain was indicted by a federal grand jury for the District of Kansas and charged with Solicitation of Child Pornography in violation of 18 U.S.C.§ 2252A(a)(3)(B) and (b). See United States v. Haultain, No. 13-20010-01-CM-JPO, (D.Kan. Feb. 13, 2013). On July 22, 2013 Haultain pleaded guilty to the charge admitting that he had solicited child pornography according to the facts detailed in the plea agreement. The Plea Agreement stated in ¶ 5:

> **Deportation Consequences**: The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States, or if his criminal conduct occurred during the naturalization process. Under federal law, a broad range of crimes are removable offenses, which may including [sic] the offense to which defendant is pleading guilty, as a crime involving moral turpitude. Removal and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one,

including his attorney or the district court, can predict to a certainty the effect of this conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is automatic removal from the United States.

On October 28, 2013, Haultain was convicted and sentenced to 78 months in prison. On April 17, 2014, the Office of Immigration Litigation sent a letter to the United States Attorney for the Western District of Missouri seeking authorization to file suit and to litigate a denaturalization action in this district. Attached to the letter was an Affidavit of Good Cause which detailed that Haultain had illegally procured his naturalization, because he could not have established that he was a person of good moral character. According to the Immigration and Naturalization Act, Haultain was required to prove that he was a person of good moral character from February 17, 2007, five years before he filed his application, until June 21, 2012, that date on which he was admitted as a citizen. Haultain plead guilty to the solicitation of child pornography between February 2010 and December 2010. The Affidavit was signed by Mark Henrie, Fraud Detection and National Security Officer, U.S. Citizenship and Immigration Services and U.S. Department of Homeland Security. The United States Attorney for the Western District of Missouri, signed the Authorization Request on May 9, 2014. On October 15, 2015, a trial attorney with the Office of Immigration Litigation ("OIL"), U.S. Department of Justice, filed a Complaint to Revoke Haultain's Naturalization.

Haultain now moves to dismiss the Complaint, alleging that the Court lacks jurisdiction because the Complaint was not filed by the U.S. Attorney for the Western District, the Complaint is not accompanied by an affidavit of the U.S. Attorney stating

2

that there is good cause for the suit and the action is barred by the doctrines of res judicata and collateral estoppel.

## II.     STANDARD

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice.  Id. (quoting Twombly).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.  Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor.  Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

## III.     DISCUSSION

### A.     Jurisdiction

Haultain argues that the statute requires all denaturalization suits to be initiated by United States Attorneys and not by trial attorneys for the Justice Department. He states that courts have interpreted the statute to mean that "*only the United States Attorney* is statutorily empowered to initiate revocation proceedings" and District courts "lack[ ] jurisdiction to consider" suits for denaturalization brought in any other manner." In re Benjamin, 217 Fed.App'x. 165, 166 (3d Cir. 2007). In this case, Haultain argues

3

that the Complaint is not signed by the U.S. Attorney and is only signed by Troy Liggett, a Trial Attorney in the Office of Immigration Litigation.  Additionally, Haultain argues that it makes no difference if the trial attorney who filed the suit had the U.S. Attorney's permission to do so, because the word "institute" in the statute requires the U.S. Attorney to actually "file" suit.  Finally, Haultain argues that although the Attorney General can be represented by employees of the Department of Justice, including trial attorneys, this statute only applies to cases which are already "pending in court" and not to the filing of new actions for denaturalization.  Because the trial attorney who filed the Complaint in this case is neither an assistant U.S. Attorney nor an acting U.S. Attorney, Haultain argues the Complaint must be dismissed.

In opposition, the Government argues that the statute simply requires the U.S. Attorney to "institute" denaturalization proceedings and in this case the Government complied with that requirement because the U.S. Attorney for the Western District of Missouri specifically authorized OIL to file suit and delegated to OIL the authority to conduct these proceedings against Haultain.  Additionally, the Government states that Congress authorized OIL attorneys to represent the interests of the United States in federal court.  28 U.S.C. §517 states that "any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

The statute states in part:

§ 1451 Revocation of naturalization.

(a) Concealment of material evidence; refusal to testify.

4

> It shall be *the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States* in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively. . . .

8 U.S.C.§1451(a)(emphasis added). In U.S. v. Malik, No. 15-9092-CM, 2015 WL 6871491 (D.Kan. Nov. 9, 2015), the Court addressed the question of whether in a denaturalization proceeding, the Complaint must be filed by the U.S. Attorney. As in the instant case, the complaint had been authorized by the U.S. Attorney for the District of Kansas, but that actual complaint was filed by the OIL. The Court found that defendant's distinction between initiation of an action and continued representation in an action was too rigid. The Court found that "[i]t is not a material distinction, and the court is unwilling to infer that Congress so intended." Id. at *2. The Court also found that defendant's reading of §1451(a) was too narrow:

> Although the statute specifies that it is the duty of the United States attorney for the respective district to initiate proceedings, the statute does not prohibit the United States attorney from delegating that duty. This is not a case where a private party has attempted to initiate the action or the Attorney General has tried to use an administrative process to denaturalize a citizen. Instead, this is a situation where the United States attorney has delegated the duty to initiate an action to another office within the Department of Justice. The statute does not prohibit this approach, and the court denies the defendant's motion to dismiss on this basis.

Id. The Court agrees with this analysis of the Malik court. The Court finds that the United States attorney for the Western District of Missouri properly authorized this suit and even though the Complaint was filed by an OIL trial attorney, both the name of the

United States Attorney and a Deputy United States Attorney for the Western District of Missouri appear in the signature block.  Accordingly, because the Court finds that the statute allows the United States Attorney to delegate the authority to institute such actions and because the United States Attorney specifically authorized this suit, the Court finds that it had proper jurisdiction over this action and hereby **DENIES** defendant's Motion to Dismiss on this ground.

### B.  Affidavit of Good Cause

Defendant argues next that the Complaint should be dismissed because it was not accompanied by an Affidavit of Good Cause, but rather only by a "Declaration." Defendant states that in his declaration Officer Mark Henie states that his declaration is based only "upon information and belief" that the contents are true and correct. Haultain argues that the statute permitting nonnotarized declarations in lieu of affidavits requires that the declarant "declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746(2). Haultain argues that the Henrie Declaration begins that the statements are based "on information and belief that the information set forth in this affidavit of Good Cause is true and correct." Haultain argues that because the declaration does not unequivocally state that the facts alleged are true, rather than just being based on Henrie's "information and belief," it does not meet the requirement of 28 U.S.C.§ 1746(2).

In opposition, the Government argues that the affidavit was signed in accordance with 28 U.S.C. §1746.  The Government states that Haultain argues that in ¶ 2 Henrie only stated that "on information and belief" that the information was true and correct. However, the Government notes that immediately above Henrie's signature, he

6

declares word for word in accordance with the statute, "I declare under penalty of perjury that the forgoing is true and correct."

In his Affidavit of Good Cause Henrie states that in his capacity as an Fraud Detection and National Security officer with U.S. Citizenship and Immigration Services, he has access to the official records of Department of Homeland Security, including the immigration file of Rex Haultain. Officer Henrie states that after reviewing Haultain's records,"on information and belief, that the information set forth in this affidavit of Good Cause is true and correct." (Henrie Affidavit, ¶2). Henrie then proceeds to detail the facts related to Haultain's naturalization application and how he procured his naturalization by willful misrepresentation and concealment of material facts. At the end of the Affidavit, directly above his signature, Office Henrie states "I declare under penalty of perjury that the foregoing is true and correct." In Malik, the defendant also raised a challenge to the affidavit of Good Cause. However, as in this case, the Court found that the Affidavit was signed by the officer who declared under penalty of perjury that the information was true and correct. The Court stated: "[a]lthough Officer Bruggeman used the terminology 'upon information and belief,' the affidavit need not be based on personal knowledge. Instead, it may be 'based upon facts disclosed by official records. . . .to which [the declarant] had access.' Nowak [v.United States], 356 U.S. [660] at 662 [(1958)]. The affidavit satisfies the legal requirements." Id. at *3. Similarly, in the instant case, the Court also finds that Officer Henrie's Affidavit satisfies the legal requirements of the statue. Accordingly, the Court hereby **DENIES** defendant's Motion to Dismiss on this ground.

7

Case 5:15-cv-06141-FJG   Document 12   Filed 09/12/16   Page 7 of 12

### C. Res Judicata/Collateral Estoppel

Defendant also argues that the Complaint is barred by the doctrines of res judicata and collateral estoppel. Haultain argues that in his criminal case in the District of Kansas, the United States did not charge him under 18 U.S.C. § 1425 for unlawfully procuring his naturalization, although it could have. Haultain argues that the United States chose to forum shop by filing this action in an entirely different jurisdiction after the criminal conviction was final. Haultain argues that res judicata bars the Complaint because the plea agreement demonstrates that the issue has been litigated and the United States chose not to pursue denaturalization in the criminal case. Haultain also argues that collateral estoppel also bars the Complaint because the United States should have resolved all of its claims against Haultain in the original criminal case. Haultain argues that the instant suit is "a different cause of action that requires relitigation of issues actually litigated and necessary to the outcome of the first action."

In opposition, the Government states that the current action is a *civil* denaturalization proceeding and it may bring this action now because it was not litigated in the criminal proceedings. The Government argues that res judicata does not bar this action because the two causes of action are different. In the criminal case, Haultain was being prosecuted for solicitation of child pornography. In the instant civil case, the Government is seeking to revoke Haultain's naturalization. The Government argues that these two actions arise out of different facts, require different proof and redress different wrongs. Solicitation of child pornography is a criminal charge that requires the Government to prove beyond a reasonable doubt that defendant knowingly solicited material or purported material that contains "(i) an obscene visual depiction of a minor

engaging in sexually explicit conduct; or (ii) a visual depiction of an actual minor engaging in sexually explicit conduct." 18 U.S.C. § 2252A(a)(3)(B). Civil denaturalization requires the Government to prove by clear and convincing evidence that Haultain illegally procured his naturalization or procured his naturalization through willful misrepresentation or concealment of material facts that results in the revocation of his naturalization. 8 U.S.C. § 1451(a). The Government also states that collateral estoppel does not bar this action. The Government notes that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." United States v. Baugus, 761 F.2d 506, 508 (8th Cir.1985)(quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)). The Government notes that the District of Kansas court did not determine whether Haultain illegally procured his naturalization or whether he committed immigration fraud. The Government also notes that it is not forum shopping by filing this action in the Western District of Missouri, as the statue specifically authorizes suit to be brought in the district where the defendant resides. The Government states that the defendant's last known address was in Riverdale, Missouri, so the action was properly brought in this district.

In U.S. v. Maslenjak, 821 F.3d 675 (6th Cir. 2016), the Court explained that there are two alternative approaches to deportation:

> Construing 8 U.S.C.§ 1451 and 18 U.S.C.§ 1425 together, Congress has created two alternative approaches to denaturalization, one civil and one criminal. The denaturalization procedure established under 8 U.S.C. § 1451(a) is civil and equitable in nature, initiated simply by filing a petition in the district court where the citizen resides, and carries a "clear, unequivocal, convincing" standard of proof. Section 1451(e) creates a second statutory path to denaturalization which is criminal in nature, because § 1451(e) makes denaturalization mandatory where the citizen is

9

> found guilty of violating 18 U.S.C.§1425. Obviously, the alternative procedure requires the government to seek an indictment and establish probable cause, afford the citizen all of the constitutional due process rights owed whenever a person is accused of a criminal act, and meet a higher burden of proof (beyond a reasonable doubt).

Id. at 691.

Defendant argues that res judicata bars the Complaint for denaturalization "because the plea agreement demonstrates that this issue has been litigated, and the United States chose not to pursue denaturalization in the criminal case. Mr. Haultain's plea agreement confirms that his plea was based on an understanding that he was aware denaturalization might be an automatic consequence of some convictions, but the only conviction that would have triggered such a result would have been under 18 U.S.C. §1425. Because the United States chose not to pursue a charge under that section and thus decided not to invoke the automatic denaturalization Mr. Haultain was warned of in his plea agreement, the Court should hold that the claim is precluded from being litigated a second time in this Court." (Memorandum in Support of Motion to Dismiss, p.12).

The plea agreement states that "[r]emoval and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of this conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is automatic removal from the United States." (Doc. 4-1, pp.3-4).

10

Case 5:15-cv-06141-FJG   Document 12   Filed 09/12/16   Page 10 of 12

In <u>Harrington v. City of Council Bluffs, Iowa</u>, 902 F.Supp.2d 1181(S.D.Iowa 2012), the Court explained:

> Res judicata is available only where "1)the prior judgment was entered by a court of competent jurisdiction; 2) the decision was a final decision on the merits; and 3) the same cause of action and the same parties or their privies were involved in both cases." <u>Morse v. C.I.R.</u>, 419 F.3d 829, 834 (8th Cir. 2005)(quoting <u>United States v. Brekke</u>, 97 F.3d 1043, 1047(8th Cir.1996)). Collateral estoppel bars relitigation of an issue where: "1) the party sought to be precluded in the second suit was a party, or privy to a party, in the prior suit; 2) the issue sought to be precluded is the same as the issue involved in the prior action; 3) the issue was 'actually litigated' in the prior action; 4) the issue was determined by a valid and final judgment; and 5) the determination in the prior action was 'essential to the judgment.'" <u>Id</u>. (quoting <u>Anderson v. Genuine Parts Co.</u>, 128 F.3d 1267,1273 (8th Cir.1997)).

<u>Id</u>. at 1185.

The Court finds that neither res judicata nor collateral estoppel bar the Government's Complaint in this instance. Both res judicata and collateral estoppel require that the same cause of action be litigated in both actions. In this case, the causes of action are completely different. The proceedings in the District Court of Kansas were a criminal prosecution for solicitation of child pornography. The proceedings in the Western District of Missouri are a civil action for denaturalization. The defendant seems to argue that because the Government could have sought to denaturalize him in connection with the criminal case, but chose not to, that the Government is now precluded from bringing the civil denaturalization proceedings in this Court and that they are improperly attempting to "forum shop" by bringing those proceedings in the Western District of Missouri. However, as explained above, there are two alternative paths to denaturalization, one of which is criminal and one of which is civil in nature. Because the Government choose not to charge Haultain under 18 U.S.C. § 1425(a), does not

11

mean that the Government is later precluded from seeking denaturalization under the civil statute. Additionally, the Court finds that the Government was not improperly attempting to forum shop by filing this case in the Western District of Missouri, as the statue provides for filing the suit "in the judicial district in which the naturalized citizen may reside at the time of bringing suit." 8 U.S.C. § 1451(a). The Government states that Haultain's last known residence was in Riverdale, Missouri. For the reasons stated above, the Court finds that the neither res judicata nor collateral estoppel preclude the Government's denaturalization action.

## IV. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion to Dismiss (Doc. No. 3) is hereby **DENIED** and defendant's Motion to Stay Discovery is hereby **DENIED AS MOOT** (Doc. # 10).

Date: September 12, 2016　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　United States District Judge